26 C.C.P.A. (Patents)

## In re SCHULTZ et al.
## Patent Appeal No. 4168.

Court of Customs and Patent Appeals.
June 5, 1939.

Watson, Bristol, Johnson & Leavenworth, of New York City (Clair V. Johnson, of New York City, of counsel), for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting, in view of the prior art, claims 14 to 17, inclusive, of appellants' application for a patent. No claims have been allowed.

Claim 17 is illustrative of the claims and reads as follows: "17. A process for the preparation of a flour from soy beans, which comprises preparing a flour containing inherent enzymes by comminuting soy beans to from 10 to 40 mesh, admixing ethyl acetate therewith in an amount sufficient thoroughly to wet the comminuted beans, subjecting to pressure of from 5,000 to 15,000 lbs. per square inch whereby ethyl acetate and oil are removed and a residue of bean material obtained, and then drying the thus obtained residue and grinding to a flour, all at a temperature less than 50° C."

The references cited are:
Pratt et al., 305,224, September 16, 1884.
Riddle, 1,076,997, October 28, 1913.
MacIlwaine et al., 1,410,822, March 28, 1922.

Rewald, 1,917,734, July 11, 1933.

Haas et al., 1,947,200, February 13, 1934.

Appellants' alleged invention is described by the examiner in his statement as follows:

"This invention relates to a method for the extraction of oil from various oil bearing materials, including seeds, beans, and the like. More particularly, it relates to a method for the extraction of oil from beans, as the soy bean.

"The soy beans are ground in a mill to a size of 10 to 40 mesh and the hulls simultaneously removed. The comminuted soy bean meal is admixed with a solvent such as ethyl acetate, in an amount sufficient to thoroughly wet the bean meal. The solvent treated meal is now subjected to a pressure of about 10,000 pounds per square inch. This pressure treatment results in the expulsion of most of the added solvent and the admixed oil. The extracted meal is now dried and ground into a flour of 180–200 mesh.

"The oil and solvent are separated by a suitable distillation process and the solvent returned for further use.

"This entire process is carried out at a temperature below 50° C. to avoid injury or destruction of the naturally occurring enzymatic properties of the soy beans. These naturally occurring enzymes are stated to have the property of bleaching or decolorizing the carotin present in certain grain flours. This makes possible the production of a lighter colored bread by the addition of soy flour to the grain flours ordinarily used in baking."

The patent to Haas et al. discloses a process for the extraction of oil from soy beans by the application of pressure thereto, ranging up to 16,000 pounds per square inch, at room temperature, and crushing and grinding the pressed cakes and drying the same at a temperature below 50° C.

The patents to Rewald, Riddle, Pratt et al., and MacIlwaine et al. relate to the extraction of oil from oil bearing seeds by the use of solvents, such as benzol. The patent to Rewald states:

"The comminuted seed material may be placed in a suitable extraction or leaching device, and a mixture of benzol with 1 to 10% of ethyl or methyl alcohol is allowed to percolate through the mass, until freed from oil to the desired extent. * * *

"Methyl alcohol is superior to ethyl alcohol for use in this process since it has a better dissolving action. Ethyl can however be employed. The composite solvent dissolves out not only the oil but the whole of the lecithin, including the lecithin which is in the free state in the seeds, as well as that which is in the form of a loose combination with the proteins. If benzol were used as the solvent, it would not dissolve out this latter. * * *

"I have referred above in numerous places to the use of benzol. It will be understood that it is not necessary to use chemically pure benzene, and ordinary benzol contains a mixture of benzene, toluene and the like. Toluene, xylene or mixtures of these or either of these with benzene may be employed in place of the benzol, in the proportions above referred to, that is to say the single-ring aromatic hydrocarbon is in all cases at least 10 to 20 times greater than the amount of the lower alcohol."

The examiner rejected all of the claims on Haas et al. in view of the other patents showing the use of a solvent to completely extract the oil. The Board of Appeals affirmed the decision, specifically holding that claims 14, 15, and 16 are not patentable over Haas et al. in view of Rewald. As to claim 17, which specifies ethyl acetate as the solvent, the board stated: "Claim 17 specifies ethyl acetate as the solvent. We see nothing inventive in using this specific substance as a solvent when it is merely the equivalent of benzol as a fat extractor."

We are clear that, in view of the references cited, there is no invention in adding to the process disclosed by Haas et al. the use of solvents disclosed by Rewald and other cited references.

No authorities need be cited to the point that if the disclosures of two or more patents can be combined by the exercise of ordinary skill, without involving the inventive faculty, claims embodying such combination are not patentable.

With respect to claim 17, which describes ethyl acetate as the solvent, appellants' counsel in their brief and upon oral argument contend that the Board of Appeals erred in holding that ethyl acetate is merely an equivalent of the benzol as a fat extractor shown by the patent to Rewald.

With respect to this contention we would observe that no motion for recon-

sideration of the decision of the board was made. Under rule 76 of the rules of the Patent Office this holding could have been challenged by appellant. See In re Eliot, 22 C.C.P.A., Patents, 1088, 76 F.2d 309.

In view of these circumstances, we must hold that there is nothing in the record to show error upon the part of the board in holding that ethyl acetate disclosed in appellants' application is the equivalent of benzol as shown in the patent to Rewald.

For the reasons hereinbefore stated, the decision appealed from is affirmed.

Affirmed.